KATE SHAW v. THE STATE.

No. 3061. Decided March 25, 1914.

Rehearing denied April 22, 1914.

**1.—Abortion—Evidence—Exculpatory Statements—Charge of Court.**

Where, upon trial of abortion, the State had introduced a portion of defendant's statement adduced before the grand jury in which there was nothing exculpatory, there was no error in the court's failure to charge that the State must disprove the exculpatory part of the testimony or the jury would take it as true.

**2.—Same—Evidence—Identity of Defendant.**

Where, upon trial of abortion, the identification of the defendant was sufficient to admit the testimony of the State's witness that she was carried to her for the operation, there was no error, neither was there error in permitting her to state that the person who carried her there was the author of her ruin and the father of her child.

**3.—Same—Evidence—Grand Jury Testimony.**

There was no error in permitting the State to introduce only a portion of defendant's statement before the grand jury, as defendant was permitted to introduce the remainder of it when she offered to do so.

**4.—Same—Evidence—Accomplice—Abortion.**

Because the prosecutrix willingly submitted to have the operation for an abortion performed on her, this did not constitute her an accomplice. Following Willingham v. State, 33 Texas Crim. Rep., 98, and other cases.

**5.—Same—Instrument—Charge of Court.**

Where, upon trial of abortion, the evidence showed that the defendant introduced her fingers into the privates and womb of the prosecutrix, this in law would be an instrument; besides, it was shown that some kind of an instrument was inserted.

**6.—Same—Definition of Offense—Punishment—Charge of Court.**

Where the court's charge, on a trial for abortion, did not authorize a double punishment, and the jury assessed the lowest punishment, there was no reversible error.

Appeal from the District Court of Collin. Tried below before the Hon. F. E. Wilcox.

Appeal from a conviction of abortion; two years imprisonment in the penitentiary.

The opinion states the case.

*G. R. Smith* and *Beverly S. Dudley,* for appellant.—On question of accomplice: Miller v. State, 37 Texas Crim. Rep., 575; Hunter v. State, 38 id., 61; Huffman v. State, 57 Texas Crim. Rep., 399, 123 S. W. Rep., 596.

On question of exculpatory statements: Pratt v. State, 50 Texas Crim. Rep., 227; Combs v. State, 52 id., 613; Cook v. State, 71 Texas Crim. Rep., 537, 160 S. W. Rep., 465.

On question of instrument inserted: King v. State, 35 Texas Crim. Rep., 472.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of accomplice: Watson v. State, 9 Texas Crim. App., 237, and cases cited in opinion.

HARPER, JUDGE.—Appellant was charged with and convicted of having produced an abortion on one Cassie Gaines.

That Cassie Gaines gave premature birth to a child is proven conclusively. She testified that Sam Rhyon, her cousin, was the father of her child, and that Sam Rhyon carried her at night to the home of a woman in McKinney, and to whom he introduced her as Kate or Kit Shaw; that Rhyon made the arrangements with the woman, and this woman caused her to lie down, and the woman then inserted her fingers into her privates, manipulating with her fingers for some minutes. That she then was carried home by Rhyon. A few nights later Rhyon again carried the witness to this woman, who carried her into the kitchen, and when she had laid down the woman inserted some kind of an instrument into her private parts, the manipulation of which was very painful and caused her to bleed. The child was aborted a few days after this. On

the trial she could not identify appellant as the woman, saying it was at night and dark on both occasions when she was carried to see the woman.

The county attorney then introduced a portion of appellant's statement or testimony adduced before the grand jury. That portion introduced by the State reads as follows: "Cassie Gaines came to my house with Sam Rhyon. I put my finger up in her and pushed up her womb. Sam Rhyon stayed on the porch while I did this. I did not know Sam Rhyon when he came there but he told me his name was Sam Rhyon. I had never seen the girl before and did not know her. I pushed her womb up as far as I could. I did not give her any medicine." This was all of the portion of her testimony introduced by the State, and it is seen there is nothing exculpatory in that portion of the testimony, therefore it was not necessary to charge that the State must disprove the exculpatory part of the testimony, or the jury would take it as true. The exculpatory part of the statement was introduced by defendant and, therefore, called for no such charge.

There was no error in admitting the testimony of Cassie Gaines, although she did not identify appellant as the woman to whom she was carried. She testified that Sam Rhyon carried her to a woman named Kate or Kit Shaw; this appellant admits, that Sam Rhyon brought Cassie Gaines to see her. Thus the identification was made sufficient to admit the testimony of Cassie Gaines. Neither was there error in permitting her to state that Sam Rhyon, who carried her to appellant and made the arrangements to have the operation performed, was the author of her ruin and the father of her child.

When the State offered only a portion of appellant's statement or testimony adduced before the grand jury, the defendant objected on the ground that if the State introduced any portion of it, it should be compelled to introduce all she said on this occasion. There was no error in permitting the State to introduce only such portions of this testimony as it desired, the defendant being permitted to introduce the remainder of it when she offered to do so. It is like the examination of a witness: one can ask the witness such questions and adduce such testimony as he desires; if there are other facts in the breast of the witness, connected with the same, that the opposing counsel desire, he should be, and in this instance was, permitted to adduce it.

Because Cassie Gaines willingly submitted to having the operation performed on her, it did not constitute her an accomplice under the law of this State. This has been so often decided we deem it unnecessary to discuss that feature of the case. Willingham v. State, 33 Texas Crim. Rep., 98; Miller v. State, 37 Texas Crim. Rep., 575; Hunter v. State, 38 Texas Crim. Rep., 61; Watson v. State, 9 Texas Crim. App., 237; Wandell v. State, 25 S. W. Rep., 27; Link v. State, 73 Texas Crim. Rep., 82.

There was no evidence calling for a charge that if appellant did produce the abortion by her acts, that if she did not use an "instrument" in so

doing, she would not be guilty. The fingers inserted into the privates and womb of a female would be an instrument within the meaning of the Code defining this offense. In addition to this, it is shown that on the second visit, in addition to the fingers, an instrument was used by appellant.

The court instructed the jury in defining the offense: "Our statute provides that if any one shall designedly use toward a pregnant woman any violence internally applied and shall thereby procure an abortion, he shall be punished by confinement in the penitentiary not less than two nor more than five years; if it be done without her consent the punishment shall be doubled." The court in submitting the issues to the jury did not authorize double punishment, but only that if guilty her punishment be assessed at not less than two nor more than five years in the penitentiary. The jury assessed her punishment at only two years. Under such circumstances the matter complained of presents no error.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied April 22, 1914.—Reporter.]